al. May it please the Court. Counsel, one short disclaimer if I may. You may hear in my voice. I've been a little bit under the weather this week, a little bit of that crud that's going around, so if I cough or this or that or need some water, please forgive me. As this Court may know, and even some members of this panel, frankly I've dedicated my life to representing children with disabilities and children with disabilities in schools who have been injured. So I follow the cases that this Court writes in great, great detail. I have, over the course of my career, represented hundreds of children in special education cases and had a couple dozen cases filed in federal court regarding very similar issues that we're going to discuss today. And I thought a lot about this case and I'll submit to you that I think this may be the most important case I've ever had. And the reason why is because while I'm here representing Coleman Cripps, I believe that the social and policy and legal implications of this case regarding what's considered the schoolhouse to the jailhouse pipeline is something that I ask the Court to be mindful of as they go back and review this case. Because I believe as an attorney, one of the things we look for is direction from the Court of how we go forward. Lawyers on both sides need that to represent their clients. And I would ask once again that I think this is a very, very important case because it deals with issues much, much greater than Coleman Cripps. The counsel you've used his actual name twice. This recording will be posted at the end of the day. And so far, the briefing and otherwise have not generally used his name, so I'm not sure exactly why you're using his name, but you may want to refer to him in some more generic way. I will, Your Honor. Thank you very much for pointing that out. The other issue that I think is incredibly important, and it may in fact be an issue of first impression for this Court, is creating the distinction under Section 504, the Rehabilitation Act of 1973, as to what's the correct standard of review when we're looking at a hostile educational environment who has a standard based upon Davis and SS versus Kentucky regarding deliberate indifference as compared to what's called a gross misjudgment or a gross deviation of professional standard of care, which is also a separate Section 504 issue, which seems to have a different review. And in Stewart, Your Honor, in Stewart 1, in the dissent, there was some discussion about what that means. And also in Lance that Judge Higginson wrote, also there was discussion about these cases. So I think this is a very, very important public policy issue for those attorneys that represent children and those attorneys that represent school districts as what's the correct  standard of review for these cases. And then third, of course, is the general standard of what's the standard of review in a 12B6 motion. To that end, I'd like to say that we're going to abandon any of our constitutional claims. We're going to abandon any of the claims related to amending the complaint. Because I think they're all both best subsumed by questions related to the Section 504 case. So the due process and the equal protection arguments. All the constitutional issues are out. You know, my theory, quite frankly, Your Honor, is, I mean, the constitutional claims are always the most difficult. I think our strongest cases are on the statutory claims under Section 504. As I'll go into in a minute, I think we meet the standard for a 12B6 motion. You're not asserting the procedural due process substantive claims are equal? Not at this point, Your Honor. And the reason why, I can address that one kind of. No, you don't need to defend that. I mean, you know, Harris v. Montauk, the transfer is not necessarily a denial of procedural due process. No underlying right. So you've got a lot of law against you, so I just wanted to know what you were saying. That's why we dropped it. I understand. I think you did the right thing. I don't have a problem with that. So to that end, I would like to respond to any and all questions that you all might have regarding the pleadings in this case and how they do or do not satisfy criteria under a 12B6 motion, because I think they do. One of the issues . . . I'm sorry, Your Honor, it looks like you're going to ask me a question. Well, you're asking us for our input at this stage, and I'd rather respond to the arguments that you're making, so please proceed. Fair enough, Your Honor. Over the course of a very, very short period of time, school district professionals in this case steered this young man, instead of into special education services and the remedial accommodations and modifications he's due under special education under Section 504, into the courthouse. Over the course of a two-week period, the young man had incidents where he spoke to a young lady and brought up some comments about . . . did she have . . . did she have . . . was she making porn? The school district personnel spoke to the parents and asked that the parents file charges against the young man for sexual harassment. A short while later, the young man told the little boy in class that he had a small penis. The school district official spoke to his parents and asked them to file charges against the young man for sexual harassment. A little while later, he belched in a boy's face. The school district personnel spoke to their parents and asked their parents to file charges against him for sexual harassment. A little bit later, there was an incident where he put a wet willy, which is you put some saliva on your finger and you put it in a boy's ear, and they went to those parents too, and they asked them to file charges against the young man for sexual harassment or sexual assault. The reason for that is because if it's a sexual assault, it's a felony, and you get the kid out of school. It's real simple. Now, we think those those claims show, one, hostile education environment under Section 504. We think those claims alone show a gross deviation from professional standards of care also under Section 504, because clearly teachers are not supposed to steer kids into jail. In fact, teachers are supposed to steer kids out of jail. Now, there was a question about and a pleading issue about whether we satisfied criteria that these types of acts and or omissions rose to the level of discrimination based upon disability. And one of the sub issues in this is that was there concerns about retaliation? And early on, we had tried to add a claim solely based upon retaliation, because actually under Section 504, there is another claim for retaliation when you advocate on the behalf of someone with a disability. We find that similarly in the ADA under Title 9. People who advocate on behalf of a person in that position is also protected. You can't retaliate against them. So the defendant wrote that we didn't we haven't proved that the child was discriminated against or that there was a hostile education environment against him based upon disability or there was a gross deviation from professional standards of care against him based upon disability is that we admitted that it was retaliation. But you see, that subsumes the question because the retaliation was based upon protected activity of representing someone with disability. So clearly, if that underpinning is based upon disability, then clearly we've raved an inference. And once again, we're at a 12B6 motion. Unlike Lance, which was a motion for summary judgment. And in fact, Stewart was a was a motion to dismiss case as well. I believe that we have raised sufficient facts, sufficient inferences to show that he was a victim of discrimination based upon disability for both. I would almost call it opposite sides of the same coin. Any questions yet? No. Let me keep going. In addition, during the same period, there was a teacher that ran into the young boy and the teacher ended up filing assault charges against him for assault upon a public servant. This was purposefully done. They arranged for a teacher to run into the boy. And then a few weeks later, they filed charges against him. I would argue, once again, that is that is a hostile educational environment. And that is not something we want teachers to do, setting kids up for felony charges. What I think to me, really, plain English took the cake. So a little boy walking through the hall one day and he's tapping or rubbing his pencil against the wall and he hears two teachers saying, aha, now we can get him for destruction of public property. So we have a conspiracy in the whole school that they want to get rid of this kid. Now, granted, he does a lot of things that are stupid. And like most kids, you know, thank God he's grown up and he's beyond all that now doing quite well. But at the time, this was a conspiracy across the school to get rid of this kid. And once again, I believe for 12B6 purposes, it clearly raises an inference of a hostile education environment and it clearly raises an inference of a gross deviation from professional standards of care. And let me say, as we kind of get into what those standards might be. Well, before you, Judge McBride, there isn't that I mean, most of your brief to us and most of your arguments below were the constitutional arguments that we're putting aside. Correct, Your Honor. So Judge McBride didn't spend that much attention to this. But I thought the essence of his argument was that even if you take your allegations of a conspiracy, a hostility as true, you didn't allege any facts that it was because of his disability that instead their their their their attention to him was because of multiple behavior infractions, one that led that's the police referral. And in fact, some of the allegations that you assert would be inconsistent with insensitivity to the disability, because, for example, it's called the MDR hearing. That's correct. That's not a requirement at all. But they gave him that. So he's in the special education program. Right. This toilet incident occurs and he gets the MDR hearing. Right. And then the referral to the police occurred after that. So so I thought Judge McBride on the tail of your arguments, the 504 was saying, let's accept that there was some hostility, those facts we accept. But it wasn't solely because or even at all because of the disability, no facts were alleged as to that. And then I think so that's my question. But even as you argue it now, it's a shift. I hear you shift between not because of the disability, but because of frustration at the advocacy relating to the disability. That's correct. But I haven't shifted. Let me better underscore might be a better term to use is that. How much time do I have? OK. Short anecdote. One of the things I do besides this is I work with the magistrate in mental health court for Judge Guy Herman, Travis County, Texas. And I go to the state hospital and we adjudicate whether or not people need to be in the hospital, stay at the hospital. And one of the things people always ask is what's the person's diagnosis? And my position is the magistrate is I don't care about his diagnosis.  So to answer your question, Your Honor, the issue is that the person's diagnosis is that it was it was the student's behaviors that got him in trouble. Though, if you look through our brief and their brief and every time you see the word disability put in the term behaviors, then absolutely we have made argument that the discrimination that he bore was based upon his behaviors, his disabilities. And he was you know, he was accepted as a student with a disability. So there's no question about that. I hope that answers your question. Well, what maybe be precise. What about the MDR hearing? Was that required or was that for him? It was required. And in fairness to everybody here, one of the issues that occurred was that when we when we appealed the case, we went through administrative exhaustion because, you know, we've learned that we have to in all these cases. So the case originally went before Judge McBride include both the appeal and the separate causes of action. And he severed them. So that's created a little bit of confusion, even in the original complaint, because it really had both issues in there. But once again, I want to underscore that the reason there was the animus, the reason there was the hostility, the reason there was the gross deviation of professional standards of care was based upon the student's behaviors. And those behaviors are disabling conditions upon which, in fact, the school district provided services for. Wouldn't there be some dovetailing, even in the 504 line of authority with the Harris Navarro's line, which is how is there a gross deviation if if the action taken was referral to an alternative school that may be able to assist the child to understand privacy limits? Well, that goes backwards a second, answers the question about the constitutional claims very briefly. You know, to show bias and animus as a due process issue is very, very difficult. But to show bias and animus as an underlying issue for deliberate indifference or to show bias and animus as a condition that drove the placement as a fact issue that I think needs to go back to the district court for us to explore. But what's the case that says there could be gross deviation from a referral to an alternative school for a period of two months? Let me be direct, Your Honor. I'm not bringing that up today. That's not my that's not my question. That's not the issue I'm bringing before the court. My issue before the court is that there was a course of conduct over a significant period of time that that satisfies the standard of of hostile educational environment and a gross deviation of professional standards of care. I understand I have some rebuttal time. I hope I use it at that point. Thank you very much. Counsel. Miss Walker, you can proceed and you can proceed in my absence. I'll be right back. Go ahead. Good morning. May it please the court. Counsel, I'm Meredith Walker and I am honored to represent her. She was Bedford Independent School District, as well as Principal Herbo and Vice Principal Emery, who I guess no longer have claims pending against them. I want to start with the retaliation issue that Mr. Sirkill brought up. He told you at the outset of his argument that he is not challenging the repleting issue. So I'm unclear as to how or why we would be discussing the retaliation issue as we as we put forth. I think it's only under the 504, as I understand it. Yes. And so if we don't need to go back and revisit those things. Yes, Your Honor. So when we're looking at the 504 claims that Mr. Sirkill and plaintiffs have brought forward, the question is, is what standard are we looking at to determine whether or not he has pled that plaintiffs have pled a cognizable claim to go forward in this matter? Mr. Sirkill and plaintiffs in their brief rely on the bad faith gross misjudgment standard that was discussed in both the vacated steward opinion as well as in the Lance versus Louisville case. And I think you have to go back and look at DA versus Houston to get an idea of what we believe the Fifth Circuit was doing when they set forth the bad faith and gross misjudgment standard. In DA versus Houston, the court said, we concur that facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under Section 504. This court said that, granted your relief on the basis that they did not, there was not a sufficient pleading that the conduct was because of the disability. Do you, you seem to be making some other, defending some other position. Yes. And Mr. Yes, you are. I don't understand what you're saying. Well, and plaintiffs argue that they do because the, the conduct that the district allegedly engaged in was bad faith or gross misjudgment. And our argument is that that pleading standard doesn't even apply. And even if it did, as you said, your honor, there's been no connection between CC's disabilities and the alleged conduct or the alleged conduct by the district. There's been. Right. And, and plaintiffs haven't shown that there was just because a student has a disability and engages in misconduct doesn't automatically mean that the student is being punished or being disciplined because of the disability. There's got to be more. You have to show that the action that's being taken is solely because of the student's disability. Again, plaintiffs want to argue that the bad faith gross misjudgment standard applies, but there's nothing in this case that's predicated over a disagreement under the individuals with disabilities education improvement act. And they haven't alleged that there's been a denial of faith under 504. And they're not alleging in this case, a denial of faith under the IDEA. And so you've got to look at strict discrimination, sole discrimination, not this bad faith, gross misjudgment. But again, there is a disconnect because there is no connection between the actions he's engaged in and the conduct alleged against the district. What's, what's your best case for that proposition, which was the one that district court ruled on. That, that, that there's no connection here. I would go back to all of the case law that says that, um, you have to discrimination is based solely, or I'm sorry, that the conduct has to be based solely on discrimination. And I haven't found any case law on point looking at this direct issue. But again, if every behavior gives rise, excuse me, if every behavior gives rise to a claim for disability discrimination, then that's going to open the floodgates. And it goes back to what you were saying, judge Hickison about the whole reason we have an MDR proceeding is to prevent students from being punished because of their disabilities. That's the entire reason that exists. Before we said this. What binding effect on this case does that MDR result have? The fact that there was a hearing independent of this lawsuit, we're looking at a 12B6, were there sufficient allegations here? What relevance is that at this stage? At this stage, the only relevance that it has is just goes to show that there was no, that there was a mechanism in place to ensure that he wasn't being punished because of his disability. That's the relevance that that has on this. Okay. Well, we have some argument about whether the complaint is sufficient enough to have made that allegation. Uh, but if the allegation were there, uh, of, of such treatment, wouldn't that hearing be irrelevant? No, I still think it's relevant because of the reasons I stated. The procedure is present. Yes. School to show their good faith. No gross misjudgment, maybe whatever else. Correct. All right. Because we followed, we followed what we were supposed to do. Why do you, why do you refer these to the police encounters between a young student and a teacher for charges? That's the allegation. Well, actually, stepping hard on the disability, the allegation that there was a conspiracy to have this teacher file charges against the student. No, I'm not, I'm not talking about conspiracy. I said, what I'm doing, my question is why do you, why does the police, why does the school district take an encounter in a classroom and insist on bringing the police force behind that? We've seen that with truancy and others. Um, you, you persist in arguing something. So the district court's already ruled in favor of you on these pleadings. They, um, but I'll just suggest to you then, okay, let's talk about a little more about that and see where that goes. And one of the things that it takes you to is that they says that you would, you were referring these people for criminal charges and that seems to suggest that you're doing that despite you're not reading his disability, you're not dealing with that, uh, by calling in the getting felony charges against him, et cetera. I don't see how that helps the benefit of a child bringing in the police. Um, you know that I don't know what happened. I'm just going by pleading. So I don't suggest that that happened, but he says it didn't. And yeah, I don't hear you denying it. Well, I can't deny it at this stage because we're at the 12 B six. So we have to take his allegations as true. Now there are some allegations. You transferred him to another school. Why wasn't that sufficient? He was transferred to another school. Yes. Yes. And why it wasn't the school district's choices to whether or not charges were brought against him. That's a choice that's made by parents and the district did not need charges to be brought against him in order to transfer him to the D A E P. And I think that's where there might be a disconnect with plaintiffs is there are allegations that the district was continually referring him to the police for felony charges in an effort to kick him out of school. Well, the reality is, is that whether or not charges are brought against him has no bearing on whether the district. Well, it depends on where the district is. It's a party to those following those charges and how you handle the parents of those other children. He's alleging that essentially what the school district does in conferring with the parents of the child that was affected by this boy's conduct to urgently file charges. Now, I don't know what happened, but I don't hear you saying that the school doesn't discourage that. Well, the district can't file charges. I'm sorry? The district cannot file charges. I understand that, but they have a policy that encourages that to be done by the parents. I don't I'm just asking questions because we're going to pierce these pleadings. I didn't see that but alleged but but you make your argument. Well, even assuming for the facts of their for the purpose of their 12 v 6 that that is true, I think that the issue still goes back to there's no allegation that Principal Hermit Herbo and Damon Emery, Vice Principal Emery, were encouraging parents to file charges against CC because of his disability. They're not saying, hey, come file these charges against him because he has ADHD or hey, file these charges against him because we're providing him with special education services. There's nothing in the pleadings that say that. I assume that when you have these incidents like that, that the parent, that the school people are talking to the parents of the other children. Absolutely. You know, when you look at your Title IX precedent. And that the subject of charges is there brought up. Well, according to plaintiffs, yes. But when we the district was not speaking to parents about filing charges. Well, if that's sufficiently pled, why isn't that a matter to be a 12 v 6 motion? I ain't in time to go forward with that if he pleads it. And the district still goes back to because there's been no connection between the special education services that were being provided to CC by the district and these allegations that the principal and the vice principal were trying to kick him out by having charges filed against him because of his disability. Why isn't that because of his disability? What else is it? Well, plaintiffs specifically pled in their amended complaint that CC was like many other premature prepubescent boys. He found great humor in making fun of others, especially when it came to things like flatulence, genital size, and various bathroom activities. He's not even tying all of the things that happened to his disability. In the amended complaint, he specifically says he was like other boys who found this type of conduct. Well, you say, well, it's just his conduct that we're not doing it because of his disability, we're doing it because of his conduct. Now, his conduct is just a manifestation of his disability. You're cutting it pretty thin, aren't you? Well, and if his conduct is a manifestation of his disability, that's where we go back to the manifestation determination review, the MDR, which is what ensures that children who are receiving special education services are not disciplined for conduct that was caused because of their disability, which is why that is relevant because we did give him the MDR. What was his disability then? His disability as pled is ADHD. ADHD, attention deficit hyperactivity disorder, which is actually subsumed under other health impairment. Thank you. Part of their allegation was that if it really were not for disability, but for misconduct, then the school would have some interest in the subsequent referrals declination. And the allegation is that there was no policy in place or no interest at all. Once the police decided there was nothing to pursue for anyone to untransfer him back. That's correct. Because school district decisions on discipline are not dictated by what the prosecuting authorities do. In fact, if you look at Texas state law, the Texas education code specifically says that conduct occurring on campus, and this is undisputably conduct occurring on campus. When he took a picture of another student using the bathroom, no question that conduct is specifically exempted from the review. When a prosecuting authority decides not to, not to pursue charges, if it's conduct occurring on campus, the Texas legislature says that school districts don't have to reassess that. So if the Texas legislature says that schools don't have to reassess that essentially giving them the opportunity to make their own disciplinary decisions, then we don't see how not reassessing it could give rise to any kind of constitutional violation, constitute bad faith, gross misjudgment, whatever standard you want to look at, the Texas legislature, it's not even an issue of the statute being ambiguous. It's specifically exempted him from that reassessment. By council. Do you have anything else? I do not. There are no other questions. Thank you. Thank you. A couple of points. Judge McBride's order says, and I'm going to read this because I think it's relevant. Plaintiff's complaint lets no fact which taken as true in support of finding that the district intentionally discriminated against him based on his disability. Plaintiff's complaint lists a litany of behavioral infractions. And once again, when I say behavioral, I think that means disability, which may, he uses the term, may have caused the above described actions, but plaintiff's pleaded that such actions were based upon his disability only in a conclusionary fact, a fashion. This might sound somewhat joking, but I want it to be taken seriously. You know, one man's conclusionary fashion is another man's inference. And it's my position that the inferences in this case clearly rise to the level of the pleading requirements we have under a 12B6 motion. In fact, the court's own language says, which may have caused the above described actions. And I think that's a big difference from may have caused to there's no evidence. If there's no evidence, there's no evidence. If it's may have caused, I think we win. Like in baseball, tie goes to the runner. And for a 12B6 motion, we have made the standard that we need to make at this juncture. I'd like to point the court's attention to a recent case. In fact, it was the only other case we were here on that dealt with a 12B6 motion. It was a Carmichael versus Galbraith. It was the Joshua Independent School District. And one of the reasons that another panel sent it back to that school on a 12B6 motion, and I quote, the district court did not analyze or even mention certain portions of the Carmichael's complaint. And I think we see the same thing in Judge McBride's order is that it doesn't really discuss in full the issues that we have brought up. I think if you have unanswered questions about what has occurred in the pleadings or have unanswered questions about what Judge McBride meant, then that's absolutely the reason why the case needs to be sent back. And I don't think either of us are experts on juvenile law, so I don't want to really speak for my friend counsel over there, but I would disagree that the Texas law does say that once the school district has information from the Juvenile Justice Authority that a child has been relieved of any legal problems, they absolutely, and the word is shall, under 37 Texas, the Texas Education Code 3706, they shall do something. And they did not do that. And we would argue, once again, that that brought it to the level of deliberate indifference or gross deviation from professional standard of care if you've got a shall and they don't do it. I really want to thank you all for letting me be here today. It's a great, great honor. Once again, I follow these cases in detail. Win, lose, or draw, you learn something. And I think this is a case of great, great public importance. I think it needs to be sent back to Judge McBride's court for that reason. I think it needs to be sent back to the court because we've satisfied all the standards related to a 12B6 motion, and I think it needs to be sent back to that court for all the children in this circuit and really across the country that have disabilities and are unfairly targeted for criminalization for their behaviors. Is there any further questions? Yes, not counsel. Thank you. Thank you both. Nice weekend, everybody. You're both representing important interests. Thanks for bringing this case to us. Uh, the argument's been useful. That is our final case of the day and of the week. We are adjourned.